IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHEKIR THOMAS,<br>*Plaintiff* | : | CIVIL ACTION |
| v. | : | |
| GEORGE LITTLE *et al.*,<br>*Defendants* | : | No. 22-2246 |

## MEMORANDUM

PRATTER, J.                                                              APRIL ____, 2024

Shekir Thomas, proceeding *pro se*, is suing a number of prison officials for allegedly violating his constitutional rights while incarcerated at State Correctional Institution – Phoenix. Mr. Thomas specifically alleges that certain defendants retaliated against him and that all defendants violated his constitutional rights (1) when he was placed on the Restricted Release List and (2) when he suffers from a number of metal disabilities and disorders.

Two of the defendants, Dr. Matteo[1] and Jamie Luquis, move to dismiss all claims against them, arguing that Mr. Thomas has failed to allege either individual's personal involvement in Mr. Thomas's constitutional or retaliation claims. However, Mr. Thomas has pled sufficient facts to state a claim against both individuals that demonstrate their personal involvement in the alleged constitutional violations that Mr. Thomas suffered. Thus, the Court denies the partial motion to dismiss.

---

[1] Mr. Thomas did not include Dr. Matteo's first name in the Complaint, nor is Dr. Matteo's first name readily apparent in other filings. Thus, the Court simply refers to this individual as "Dr. Matteo" throughout this memorandum.

1

## BACKGROUND

In May 2015, Shekir Thomas, currently incarcerated at State Correctional Institution ("SCI") Phoenix, began serving his sentence in connection with one count of attempted homicide and one count of robbery. Mr. Thomas's sentencing judge ordered that the Pennsylvania Department of Corrections ("DOC") "be aware of [Mr. Thomas]'s Autism Spectrum Disorder . . . and other disorders/disabilit[ies] and drug and alcohol issues/illnesses." The sentencing judge also ordered that Mr. Thomas be sent to the Pennsylvania DOC Diagnostic Center to ensure Mr. Thomas's mental health was "properly and adequately treated."

Mr. Thomas alleges that throughout his time within the DOC system, DOC officials were aware of his mental health disorders and disabilities and consistently misdiagnosed Mr. Thomas, leading to an incident that led to Mr. Thomas being placed on the Restricted Release List ("RRL"). When Mr. Thomas was placed on the RRL, he asked if he could appeal the application and was told that he could not.

During his time within the DOC system, Mr. Thomas was incarcerated for 21 months at SCI-Dallas. While at SCI-Dallas, Mr. Thomas attempted suicide 15 times and was diagnosed with other mental health illnesses. Mr. Thomas alleges that he was also placed in solitary confinement, which worsened his conditions, and John Wetzel, the Secretary of the Pennsylvania DOC at the time, had the sole duty of deciding who was placed on or taken off the RRL.

In September 2021, Mr. Thomas was transferred to SCI-Phoenix. He avers that his time on the RRL was "completed and approved" on the day of his transfer. Mr. Thomas avers that, once he was at SCI-Phoenix, J. Luquis, J. Terra, C. Hensley, C. Stickney, and Dr. Matteo were all members of the Program Review Committee ("PRC") that continued Mr. Thomas's RRL status. Mr. Thomas avers that he informed the PRC of his mental health disability and the harm he suffered while previously in solitary confinement. Mr. Thomas also avers that he made both

2

written and verbal requests to the PRC for his release from prolonged solitary confinement and from the RRL. The PRC did not heed his requests. Mr. Thomas alleges that he made the PRC and the psychiatry department aware of the suffering he experienced because of inadequate mental health treatment and the conditions of solitary confinement.

Mr. Thomas alleges that C. Stickney, a member of the "psychology staff," had access to Mr. Thomas's health records and attempted to remove Mr. Thomas's mental health diagnoses from his health record to cover up any wrongdoing done at SCI-Phoenix. Mr. Thomas alleges that this was done in retaliation for Mr. Thomas preparing to file a civil suit. Mr. Thomas avers that Dr. Matteo knew or should have known of Ms. Stickney's actions because (1) Ms. Stickney "opperates [sic] off of" Dr. Matteo's license and (2) Dr. Matteo must sign off any time Ms. Stickney changes an inmate's mental health record.

Mr. Thomas claims that the defendants violated his due process rights under the Fourteenth Amendment because of the lack of meaningful opportunity to challenge his placement on the RRL and that the defendants violated his Eighth Amendment rights for exacerbating the mental health challenges he faces while continuing to place him on the RRL arbitrarily. Mr. Thomas also includes a claim of retaliation. Mr. Thomas brings his claims under 28 U.S.C. § 1983.

Two defendants, Dr. Matteo and Mr. Luquis, filed a partial motion to dismiss all claims against them, arguing that Mr. Thomas failed to allege personal involvement against them. Mr. Thomas then filed a "motion" in opposition to the defendants' partial motion to dismiss, which the Court construes as his memorandum of law in opposition.

## LEGAL STANDARD

The Court grants a motion to dismiss where "it appears to a certainty that no relief could be granted under any set of facts which could be proved." *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005) (quoting *D.P. Enter., Inc. v. Bucks Cnty. Cmty. Coll.*, 725 F.2d 943, 944 (3d Cir.

3

1984)). The Court takes all factual allegations in the complaint as true. *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "To prevent dismissal, all civil complaints must . . . set out 'sufficient factual matter' to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

At the same time, courts liberally construe a *pro se* complaint. *Kovalev v. Lidl US, LLC*, 647 F. Supp. 3d 319, 335 (E.D. Pa. 2022) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). While a *pro se* litigant does not face the same standards as parties represented by counsel, *id.* (citing *Estelle*, 429 U.S. at 106), a *pro se* litigant must allege sufficient facts to state a claim. *Id.* (citing *Rivera v. Monko*, 37 F.4th 909, 914 (3d Cir. 2022)).

## DISCUSSION

To establish a claim under Section 1983, "a plaintiff must demonstrate that: (1) the conduct complained of was committed by persons under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States." *Simonton v. Tennis*, 437 F. App'x 60, 61-62 (3d Cir. 2011) (citing *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (en banc)). A key requirement of a Section 1983 claim is that the defendant "must have personal involvement in the alleged wrongs." *Christmann v. Link*, 532 F. Supp. 3d 263, 269 (E.D. Pa. 2021) (quoting *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds sub nom. Taylor v. Barkes*, 575 U.S. 822 (2015)). Though "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*[,]" *id.* (alterations in original) (citation omitted), "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed

4

others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (citation omitted).

Here, Mr. Luquis and Dr. Matteo argue that they were not personally responsible for Mr. Thomas's placement or continuation on the RRL because Mr. Thomas alleged in his Complaint that Secretary Wetzel "held the soul [sic] duty of desiding [sic] who went on or came off of" the RRL. However, the Court must construe Mr. Thomas's *pro se* complaint liberally, *Kovalev*, 647 F. Supp. 3d at 335, and Mr. Thomas also alleges that Mr. Luquis and Dr. Matteo were part of the Program Review Committee that continued Mr. Thomas's placement on the RRL. Am. Compl. ¶ 34, Doc. No. 64. Mr. Thomas also alleges that he informed the members of the Program Review Committee ("PRC"), which includes Mr. Luquis and Dr. Matteo, of his mental health disabilities and the harm he was suffering from being placed in solitary confinement. *Id.* Mr. Thomas also avers that he made both written and verbal requests to the PRC of his desire to be released from prolonged solitary confinement because it endangered his mental health and because the PRC "holds the power to request for someone's release off of" the RRL. *Id.* ¶ 35.

Not only that, Mr. Thomas avers that he made the PRC aware for years about the inadequate mental health treatment he received, the conditions of solitary confinement, and the decline of his mental health. *Id.* ¶ 36. As members of the PRC, Mr. Luquis and Dr. Matteo allegedly had to have had "personal involvement in the alleged wrongs." *Christmann,* 532 F. Supp. 3d at 269 (quoting *Barkes,* 766 F.3d at 316). Thus, the defendants' argument that they were not personally responsible for Mr. Thomas's placement or continuation on the RRL does not defeat Mr. Thomas's claims against them.

The defendants also argue that the retaliation claim against Dr. Matteo should be dismissed because, when Ms. Stickney stripped Mr. Thomas of his mental health status allegedly in retaliation for Mr. Thomas's lawsuit, Mr. Thomas merely alleges that Dr. Matteo knew or should have known of Ms. Stickney's actions. For a plausible retaliation claim, a prisoner must plead "(1) constitutionally protected conduct, (2) an adverse action by prison officials 'sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights,' and (3) 'a causal link between the exercise of his constitutional rights and the adverse action taken against him.'" *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (internal quotation marks omitted) (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)).

Here, Mr. Thomas clearly engaged in constitutionally protected conduct by filing a lawsuit. *Cf. Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) (citing *Milhouse v. Carlson*, 652 F.2d 371, 374 (3d Cir. 1981)) ("[F]alsifying misconduct reports in retaliation for an inmate's resort to legal process is a violation of the First Amendment guarantee of access to the courts."). Mr. Thomas has repeatedly discussed the ways in which his mental disorders have negatively impacted him, *see, e.g.*, Am. Compl. ¶ 21, Doc. No. 64 (describing how Mr. Thomas's mental "diagnosis and misdiagnosis" led to an incident in January 2020), and Ms. Stickney stripping Mr. Thomas of his mental health record would clearly constitute adverse action as to Mr. Thomas. Though Ms. Stickney made this decision, Mr. Thomas alleges that Dr. Matteo knew or should have known of Ms. Stickney's actions because Dr. Matteo "opperates [sic] off of" Dr. Matteo's license and must sign off any time Ms. Stickney changes Mr. Thomas's record. *Id.* ¶ 39. A plaintiff "need only show knowledge of and acquiescence in the retaliatory act to demonstrate involvement." *Martin v. Gearhart*, 712 F. App'x 179, 187 (3d Cir. 2017) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). Thus, Mr. Thomas has sufficiently pled Dr. Matteo's direct involvement in

the retaliation when Dr. Matteo allegedly acquiesced to or knew of Ms. Stickney changing Mr. Thomas's mental health record.

Finally, Mr. Thomas has demonstrated a causal link between the exercise of his constitutional rights, filing a complaint, and the adverse action, stripping his mental health record. Mr. Thomas alleges that Ms. Stickney and Dr. Matteo altered Mr. Thomas's mental health record when he provided notice that he would file a complaint, which Mr. Thomas alleges creates a First Amendment violation of retaliation. Am. Compl. ¶¶ 38-39, Doc. No. 64. By alleging that this constituted retaliation, Mr. Thomas has sufficiently pled a causal link. *See Mitchell*, 318 F.3d at 530 ("[W]e agree with [Plaintiff] that the word 'retaliation' in his complaint sufficiently implies a causal link between his complaints and the misconduct charges filed against him."). Thus, any retaliation claim against Dr. Matteo survives the partial motion to dismiss.

## CONCLUSION

Because Mr. Thomas has sufficiently alleged facts demonstrating Mr. Luquis's and Dr. Matteo's involvement in the alleged wrongs he suffered, the Court denies the partial motion to dismiss. An appropriate order follows.

BY THE COURT:

/s/ Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE