IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHEKIR THOMAS,** | : | **CIVIL ACTION** |
| | : | |
| Plaintiff, | : | |
| | : | |
| **v.** | : | |
| | : | **NO. 22-2246** |
| **GEORGE LITTLE**, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

**Perez, J.**                                                                **March 17, 2026**

This case, brought under 42 U.S.C. § 1983 by incarcerated Plaintiff Shekir Thomas against officials and employees of the Pennsylvania Department of Corrections, has been extensively litigated over several years, first with Plaintiff proceeding pro se and later with the assistance of appointed counsel. Throughout that time, however, the essential dispute has remained constant: Plaintiff alleges that Commonwealth officials subjected him to prolonged restrictive confinement despite serious mental health needs, repeated self-harm, and an obvious risk of psychological deterioration, in violation of the Eighth Amendment.

On June 4, 2025, the Court granted summary judgment in part and denied it in part. As relevant here, the Court denied Defendants' motion for summary judgment on Plaintiff's surviving Eighth Amendment claims because genuine disputes of material fact precluded judgment as a matter of law. Those disputes were not peripheral. They concerned the actual conditions of Plaintiff's confinement, the seriousness and trajectory of his mental health deterioration, the significance of his repeated suicidal actions, what each Defendant knew about the risk Plaintiff faced, and whether Defendants' response was reasonable. Since those same disputed facts also

1

framed the qualified immunity inquiry, Defendants were not entitled to summary judgment on qualified immunity grounds.

The case then proceeded toward trial. After counsel was appointed for Plaintiff and limited discovery was reopened for good cause, the Court entered an order on February 10, 2026 clarifying that its earlier summary judgment ruling had denied Defendants' motion with respect to Plaintiff's Eighth Amendment claims and that those claims remained for trial against the remaining individual Defendants. That clarification neither altered the Court's prior ruling nor announced a new one. It merely made explicit what the June 2025 Summary Judgment Order had already determined on a record that had been fully developed, thoroughly litigated, and long known to Defendants.

Defendants now seek reconsideration of the February 10, 2026 clarification order, principally arguing that the Court failed to expressly address qualified immunity in its earlier summary judgment ruling. This Memorandum explains the procedural posture of the case and the basis for the Court's prior disposition. Read together, the Court's prior rulings made clear that Plaintiff's Eighth Amendment claims were proceeding to trial because material factual disputes could not be resolved as a matter of law. The same was true of Defendants' assertion of qualified immunity. What Defendants chiefly challenge is not a newly announced ruling, but the brevity of the Court's earlier explanation. That is not a basis for reconsideration.

## I.    Procedural History

Plaintiff commenced this action pro se on June 6, 2022, asserting claims under 42 U.S.C. § 1983 arising from the conditions of his confinement and his treatment while in the custody of the Pennsylvania Department of Corrections ("DOC"). ECF Nos. 1, 2. After initial in forma

pauperis issues were resolved, the Complaint was deemed filed on August 30, 2022, and summonses were issued. ECF Nos. 11, 12.

Early in the litigation, the Honorable District Judge Gene Pratter granted Plaintiff's request for appointment of counsel and referred the matter to the Prisoner Civil Rights Panel. ECF No. 16. No attorney volunteered to accept appointment at that time, however, and after an extended period during which the case remained in suspense, Plaintiff elected to proceed pro se. ECF Nos. 38, 45, 49. Plaintiff was thereafter granted leave to amend, and he filed amended pleadings. ECF Nos. 50, 51, 63, 64.

Defendants responded to the amended pleadings through a combination of answers and partial motions to dismiss. ECF Nos. 56, 57, 65, 66. On April 8, 2024, Judge Pratter issued a memorandum and order addressing Defendants' motions to dismiss. ECF Nos. 77, 78. In that ruling, the Court narrowed certain claims but permitted Plaintiff's Eighth Amendment claims to proceed against the remaining relevant defendants.

The case then moved into discovery and motion practice. After reassignment to this Court in May 2024, ECF No. 102, Plaintiff filed a motion seeking emergency injunctive relief, including a temporary restraining order and preliminary injunction. ECF No. 111. The Court held an evidentiary hearing on June 20, 2024. ECF Nos. 113, 114, 125, 131. On July 3, 2024, the Court denied that motion. ECF Nos. 133, 134. Although emergency relief was denied, the Court's accompanying memorandum addressed the substance of Plaintiff's Eighth Amendment theory and explained why Plaintiff had shown a likelihood of success on the merits of that claim. ECF No. 133.

The parties also filed cross-motions for summary judgment. Plaintiff moved for summary judgment on June 12, 2024. ECF No. 119. Defendants filed their motion for summary judgment on July 22, 2024, along with a statement of material facts and supporting exhibits. ECF No. 138; *see also* ECF Nos. 139, 152, 154, 162, 192, 198. Plaintiff filed multiple responses and submissions in opposition and in support of his own motion. ECF Nos. 148, 153, 157, 194.

On June 4, 2025, the Court entered an order ("Summary Judgment Order") denying Plaintiff's motion for summary judgment and granting in part and denying in part Defendants' motion. ECF No. 206. As relevant here, the Court denied summary judgment on Plaintiff's surviving Eighth Amendment claims because genuine disputes of material fact precluded judgment as a matter of law. The Court did not issue a separate memorandum opinion at that time, but the ruling was entered against the backdrop of extensive summary-judgment briefing, a substantial evidentiary record, and the Court's earlier merits analysis in the temporary restraining order ("TRO") proceedings. *See* ECF Nos. 119, 133, 138, 148, 152, 154, 157, 162, 192, 194, 198. The absence of a more fulsome accompanying opinion at that time reflected a lack of elaboration, not a lack of decision.

Following the Summary Judgment Order, the case was prepared for trial. *See* ECF Nos. 205, 207–211, 217, 223, 225, 226, 232–237, 240–248. Shortly before trial, however, the Court determined that appointment of counsel was warranted and appointed counsel to represent Plaintiff in all future proceedings on July 18, 2025. ECF No. 254. The scheduled trial was cancelled. ECF Nos. 252, 253.

Counsel thereafter entered appearances for Plaintiff, and the case proceeded through additional status conferences and case-management proceedings. ECF Nos. 255, 264–271, 272–276. On October 30, 2025, the Court stayed the matter for 45 days. ECF No. 274. On December

19, 2025, the Court lifted that stay and, upon finding good cause under Rule 16(b)(4), reopened discovery on a limited basis. ECF No. 277. In doing so, the Court expressly stated that its prior grant of summary judgment to Defendants on Plaintiff's First Amendment retaliation claim remained in effect. *Id.*

After the parties submitted competing discovery proposals, ECF Nos. 280–282, the Court entered an amended scheduling order on February 10, 2026. ECF No. 284. The same day, the Court entered a separate order ("February 2026 Clarification") in response to the parties' dispute over whether Jamie Luqis, Dr. Anthony Matteo, and Christine Stickney remained "party" defendants for purposes of the reopened limited discovery. ECF No. 285. The February 2026 Clarification explained that the Summary Judgment Order had denied Defendants' motion on Plaintiff's Eighth Amendment claims because genuine disputes of material fact precluded judgment as a matter of law; that those claims therefore remained for trial against the defendants as to whom summary judgment had not otherwise been entered, including Stickney and Matteo; that the Court's later reopening of limited discovery did not alter the June 2025 merits determinations; and that, to the extent the Summary Judgment Order created ambiguity as to Defendant Luqis, the Court construed that order consistently with its denial of summary judgment on the Eighth Amendment claims to preserve those claims against Luqis as well.

On February 25, 2026, Defendants moved for reconsideration of the February 2026 Clarification. ECF No. 286. Plaintiff opposed that motion on March 11, 2026. ECF No. 287. On March 12, 2026, Defendants filed a notice of appeal from the February 2026 Clarification. ECF No. 288. This Memorandum follows to explain the basis for the Court's prior summary judgment disposition and to clarify the procedural posture in which Defendants' reconsideration motion arises.

## II.    Legal Standards

To the extent Defendants seek reconsideration of an interlocutory clarification order, Rule 54(b) supplies the Court's authority to revisit that order, though the familiar reconsideration standard still applies. Under Rule 54(b), any order "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties" may be revised at any time before entry of final judgment. Fed. R. Civ. P. 54(b); *see also* Fed. R. Civ. P. 54(a) (defining "judgment" to include "any order from which an appeal lies"). By contrast, Rule 59(e) governs motions to alter or amend a judgment and must be filed within 28 days after entry of judgment, and Rule 60(b) permits relief from a final judgment, order, or proceeding on specified grounds. Fed. R. Civ. P. 59(e); Fed. R. Civ. P. 60(b). Since the order challenged here is interlocutory in character and was entered to clarify the effect of the Court's earlier summary judgment ruling, Rule 54(b) provides the operative source of authority.

Even so, courts in this Circuit apply a demanding standard when asked to reconsider either final or interlocutory rulings. Reconsideration is appropriate only where the moving party shows "(1) an intervening change in the controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). A motion for reconsideration may not be used to relitigate matters already decided, or to advance arguments that could have been raised earlier. *Id.* Local practice reinforces that principle: in this District, a motion for reconsideration ordinarily must be filed within 14 days after entry of the order concerned, absent circumstances governed by Rule 59(e). L. Civ. R. 7.1(g). That timing issue is significant because Federal Rule of Appellate Procedure 4(a)(4) suspends the effectiveness of a notice of appeal only

where the pending post-judgment motion is one of the motions enumerated in the Rule and was timely filed under the applicable rules. Fed. R. App. P. 4(a)(4)(A), (B).

Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, and a fact is material if it might affect the outcome under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion under Rule 56, the Court must view the evidence in the light most favorable to the nonmovant and may not weigh the evidence, make credibility determinations, or resolve factual inferences in favor of the movant. *Id.* at 255. The moving party bears the initial burden of identifying the basis for the motion and those portions of the record that demonstrate the absence of a genuine issue of material fact; if that burden is met, the nonmoving party must then point to specific record evidence showing a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986).

The same Rule 56 principles govern when a defendant seeks summary judgment on qualified immunity grounds. Qualified immunity shields government officials performing discretionary functions from civil damages unless their conduct violates a federal right that was clearly established at the time of the challenged conduct. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity inquiry asks whether the facts, taken in the light most favorable to the plaintiff, show the violation of a constitutional right and whether that right was clearly established at the relevant time. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Mack v. Yost*, 968 F.3d 311, 317–18 (3d Cir. 2020). Courts may address those questions in either order. *Pearson,* 555 U.S. 223 at 236. A denial of qualified immunity is immediately appealable under the collateral-

order doctrine to the extent it turns on an issue of law. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).

At summary judgment, however, qualified immunity does not displace the ordinary prohibition against resolving genuine factual disputes. Thus, where the immunity determination turns on disputed facts—such as the conditions Plaintiff experienced, the seriousness and obviousness of the risk those conditions posed, what each Defendant knew about that risk, and whether the response was objectively reasonable—summary judgment on qualified immunity grounds is inappropriate. The Third Circuit has made clear that, in denying summary judgment on qualified immunity because of factual disputes, district courts should identify the material facts genuinely in dispute and explain why those disputes matter to the immunity analysis. *Forbes v. Twp. of Lower Merion*, 313 F.3d 144, 146, 149 (3d Cir. 2002). This case is of that kind. The qualified immunity inquiry here substantially overlaps with the merits because both turn on disputed facts concerning Plaintiff's conditions of confinement, the risk of serious mental health issues and self-harm or suicide, Defendants' awareness of that risk, and the adequacy of their response. If those predicate facts cannot be resolved as a matter of law, neither can qualified immunity.

Finally, once a notice of appeal becomes effective, the filing generally divests the district court of control over those aspects of the case involved in the appeal. *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). That principle, however, does not prevent the district court from denying reconsideration, clarifying the basis of an earlier ruling, or, where appropriate, proceeding under Rule 62.1 through the indicative-ruling mechanism if the court concludes that substantive relief would otherwise be warranted but is barred by the pending appeal. Fed. R. Civ.

P. 62.1. Here, the Court is not altering the appealed ruling; it is explaining the basis for it. Such a clarification does not reopen the merits. It makes explicit what the prior order already decided.

### III.    The Court's Summary Judgment Order Denied Qualified Immunity as to the Surviving Eighth Amendment Claims.

Defendants' reconsideration motion rests in substantial part on the premise that the Court failed to rule on qualified immunity at summary judgment. The record does not support that characterization.

In moving for summary judgment, Defendants sought judgment on Plaintiff's surviving claims in full, including on the ground that the individual Defendants were entitled to qualified immunity. *See* ECF No. 138; ECF No. 162. The Summary Judgment Order denied summary judgment on Plaintiff's Eighth Amendment claims because genuine disputes of material fact precluded judgment as a matter of law. *See* ECF No. 206; *see also* ECF No. 285. Although the Court did not, at that time, issue a more fulsome opinion separately addressing qualified immunity by name, that does not mean the issue was left unresolved. In the posture in which the case then stood, the Court's denial of summary judgment on the surviving Eighth Amendment claims necessarily operated as a denial of qualified immunity at the summary judgment stage. That is so because, on this record, the qualified immunity inquiry was intertwined with the merits. The same disputed facts—Plaintiff's conditions of confinement, the seriousness of the risk to his mental health, what each Defendant knew, and whether their response was reasonable—governed both deliberate indifference and qualified immunity. Once the Court determined that those issues could not be resolved as a matter of law because genuine disputes of material fact remained, qualified immunity was likewise unavailable at summary judgment. *See Forbes*, 313 F.3d at 149.

The Summary Judgment Order did not arise in a vacuum. By that point, the Court had before it summary judgment briefing, a substantial evidentiary record, and the Court's own prior merits analysis from the TRO proceedings addressing the same core Eighth Amendment issues. *See* ECF Nos. 119, 133, 138, 148, 152, 154, 157, 162, 192, 194, 198. Before issuing the TRO Memorandum, the Court also conducted a full-day evidentiary hearing on June 20, 2024, at which Plaintiff Shekir Thomas testified and Defendants presented testimony from Sean Grady, the Unit Manager at SCI-Phoenix, and Dr. Nancy Miller, a licensed psychologist with the DOC. ECF No. 131 at 1–3, 51–52, 72; *see also* ECF No. 133.

Read in context, the Summary Judgment Order did not omit the qualified immunity issue; it resolved it implicitly. Before summary judgment, the Court had already undertaken a careful merits review of Plaintiff's Eighth Amendment theory in the TRO proceedings and concluded that Plaintiff had shown a likelihood of success on that claim, even though he had not established the irreparable harm required for emergency relief. *See* ECF No. 133. Judge Pratter's earlier pleadings-stage ruling had likewise narrowed the case to a defined set of claims and defendants. *See* ECF No. 77. By the time summary judgment was decided, then, the Court was not confronting an abstract immunity question, but a developed record on the surviving claim. The Summary Judgment Order reflected the Court's determination that those claims could not be resolved as a matter of law. What was absent from that order was a fuller written explanation, not a disposition of the issue itself. The February 2026 Clarification therefore did not create a new ruling; it made explicit what the Summary Judgment Order had already determined—namely, that Defendants were not entitled to summary judgment on Plaintiff's Eighth Amendment claims because genuine disputes of material fact remained for trial.

IV.    **Genuine Disputes of Material Fact Precluded Summary Judgment on Qualified Immunity.**

To establish an Eighth Amendment conditions-of-confinement claim based on deliberate indifference, a plaintiff must satisfy both an objective and a subjective component. Objectively, the plaintiff must show that the challenged conditions deprived him of "the minimal civilized measure of life's necessities" or exposed him to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020). Subjectively, the plaintiff must show that the defendant prison official knew of and disregarded that excessive risk to inmate health or safety—that is, that the official was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, actually drew that inference, and failed to take reasonable measures to abate the risk. *Farmer*, 511 U.S. at 837; *Hope v. Warden Pike Cnty. Corr. Facility*, 972 F.3d 310, 330 (3d Cir. 2020). In the specific context of prolonged solitary or highly restrictive confinement, the Third Circuit has recognized that extended isolation may support an Eighth Amendment claim where prison officials knowingly subject a mentally ill prisoner to conditions posing an obvious and substantial risk of serious psychological harm. *Palakovic v. Wetzel*, 854 F.3d 209, 225–26 (3d Cir. 2017); *Porter*, 974 F.3d at 441–45.

The merits standard substantially overlaps with the qualified immunity inquiry here. If the facts, viewed in Plaintiff's favor, would permit a reasonable jury to find that Defendants knowingly disregarded an obvious and substantial risk of serious psychological harm, Defendants were not entitled to qualified immunity unless the law was not clearly established. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The Third Circuit had already made clear by the time of the events at issue that prolonged isolation of a mentally ill prisoner may violate the Eighth Amendment where

11

officials disregard the resulting risk of harm. *Palakovic*, 854 F.3d at 225–26; *Porter*, 974 F.3d at 441–45. At summary judgment, the dispositive question was whether the record left unresolved genuine disputes of material fact concerning Plaintiff's conditions of confinement, the seriousness and trajectory of his deterioration, Defendants' awareness of the risk he faced, and the adequacy of their response. The record did. Accordingly, qualified immunity was unavailable as a matter of law. *See Forbes*, 313 F.3d at 146, 149.

Defendants sought summary judgment on the surviving claims in full, including on qualified immunity grounds. *See* ECF No. 138; ECF No. 162 at 34–37. Defendants' merits and immunity arguments rested on several related propositions. They argued that Plaintiff was not meaningfully confined in "solitary confinement" because the Intensive Management Unit ("IMU"), where Plaintiff was housed, was a structured, privilege-based, phase system designed to return inmates to general population; that Plaintiff's future on the Restricted Release List ("RRL") was effectively "in his own hands"; that he was receiving regular psychological care; and that much of what Plaintiff described as suicidal behavior was, in Defendants' telling, merely self-injurious conduct for "secondary gain." *See* ECF No. 162 at 8–10, 17–20, 34–37; Defs.' SMF ¶¶ 12–27, 71–80; Defs.' Response to Plaintiff's Statement of Facts ¶¶ 10, 25, 26, 43.[1] Defendants' brief was explicit on the point, asserting that Plaintiff's claim of mental deterioration was "purely a bald legal conclusion," that the IMU did not amount to solitary confinement, and that Plaintiff's records "debunked" his account. ECF No. 162 at 8–10; *see also* TRO Hr'g Tr. 43–50, ECF No. 131.

---

[1] Because the summary judgment record substantially overlaps with the earlier TRO record, the Court cites at times by ECF number and at times by record descriptor (for example, "TRO Hr'g Tr.," "TRO Memorandum," or "Defs.' SMF") to make clear both the source of the cited material and the procedural context in which it was presented.

The summary judgment record did not materially alter the factual picture already before the Court. By July 2024, the Court had already heard live testimony from Plaintiff, Sean Grady, and Dr. Nancy Miller and had addressed the same core disputes in its TRO memorandum: the actual operation of the IMU, Plaintiff's repeated self-harm, the seriousness of the risk to his mental health, and Defendants' tendency to discount that evidence as manipulation or "secondary gain." *See* ECF No. 131; ECF No. 133 at 3–11. Defendants' summary judgment submissions added deposition testimony, declarations, treatment records, institutional records, and policy materials. *See* ECF No. 138 and attachments. Those materials expanded the paper record. However, they did not eliminate the disputes the Court had already identified; rather, they largely elaborated positions Defendants had already advanced.

First, the record did not establish as a matter of law that the conditions Plaintiff actually experienced matched Defendants' paper description of the IMU. Defendants again described the IMU as a phased program with increasing privileges, socialization, group treatment, and a path back to general population. *See* Defs.' SMF ¶¶ 12–27; ECF No. 162 at 8–10, 21–23. Plaintiff's evidence, including his TRO testimony, was that many of those purported features were not meaningfully available to him in practice: group treatment was not actually occurring, interaction with other inmates was severely limited, and his out-of-cell existence remained functionally solitary. *See* ECF No. 133 at 3–4; TRO Hr'g Tr. 12–13, ECF No. 131. Defendants did not produce undisputed evidence showing that Plaintiff's day-to-day confinement materially matched the institutional description on which they relied.

Second, Defendants did not conclusively negate Plaintiff's account of deterioration. The Court had already recognized at the TRO stage that Plaintiff's claim went well beyond a bare challenge to formal RRL placement. *See* ECF No. 133 at 9–10. Plaintiff's evidence was that

13

prolonged restrictive confinement had significantly worsened his mental health; that he had repeatedly engaged in self-harm and suicide attempts, including hanging, ingesting glass, overdosing on pills, and most recently ingesting nail clippers in May 2024; and that prison officials continued to confine him under highly restrictive conditions despite those warning signs. *See* ECF No. 133 at 4–5, 9–10. Defendants responded that there was "no evidence" supporting Plaintiff's assertion that he had attempted suicide approximately twenty times, that they had identified only thirteen instances of self-injurious behavior, and that providers had repeatedly characterized aspects of his conduct as manipulative or motivated by "secondary gain." *See* ECF No. 162 at 17–20; Defs.' SMF ¶¶ 44–61, 74–80; Defs.' Resp. to Pl.'s SOF ¶¶ 10, 26, 43. That evidence supported Defendants' interpretation of the record. It did not establish as a matter of law, however, that Plaintiff was not decompensating over time, that his reported suicidality was fabricated, or that prolonged restrictive confinement was not aggravating a substantial risk of serious harm.

Third, Defendants' proof was too general on the question of prison official's knowledge and response. They again relied on policy directives, annual psychological review requirements, and evidence that treatment was nominally available. *See* Defs.' SMF ¶¶ 6–11, 66–80. They also relied heavily on Dr. Miller's view that, during her May 29, 2024 evaluation, Plaintiff was not suicidal, homicidal, delusional, or psychotic and did not present immediate concerns precluding continued RRL placement. *See* ECF No. 162 at 18–19; Defs.' SMF ¶¶ 61, 76–80. That evidence did not answer the defendant-specific questions on which liability turned: what each Defendant knew about Plaintiff's condition, what each Defendant observed or was told, and whether each responded reasonably. In a deliberate-indifference case, those are the critical facts.

Finally, Defendants' theory that Plaintiff was malingering remained what it had been at the TRO stage: a disputed inference, not an established fact. The summary judgment record included

14

notes and opinions suggesting that some providers viewed Plaintiff as manipulative, inconsistent, or motivated by "secondary gain." *See* ECF No. 162 at 17–20; Defs.' Resp. to Pl.'s SOF ¶¶ 10, 26, 43. The Court had already explained in its TRO memorandum why that skepticism did not resolve the issue. Defendants, the Court observed, "minimize or wholly disregard Mr. Thomas' vulnerabilities," offered no evidence that his attempts were "anything but bona fide suicide attempts," and placed undue weight on whether he had a history of "feigning symptoms for secondary gain." ECF No. 133 at 9–10. The Court further explained that it was "immaterial whether Mr. Thomas' suicide attempts were motivated by secondary gain—he either did or did not attempt to kill himself." *Id.* That reasoning remained equally apt at summary judgment. Whether Plaintiff exaggerated or manipulated aspects of his condition is a credibility-based factual issue for a factfinder, not one the Court may decide in Defendants' favor as a matter of law.

In short, Defendants' summary judgment record strengthened their competing account of the case, but it did not make that account the only permissible reading of the evidence. Material disputes remained as to the conditions Plaintiff actually experienced, whether those conditions were worsening his mental state, what each Defendant knew, and whether Defendants reasonably responded. Summary judgment on qualified immunity grounds was therefore unwarranted.

## V.    Defendants Have Not Shown Grounds for Reconsideration

Defendants have not shown any basis for reconsideration of the February 2026 Clarification. They identify no intervening change in controlling law, no newly discovered evidence that resolves the material factual disputes already present in the record, and no clear error of law or fact. *See Max's Seafood Cafe*, 176 F.3d 669, 677 (3d Cir. 1999). Defendants' motion rests on the contention that the Court should have spoken more explicitly when it denied summary judgment on Plaintiff's surviving Eighth Amendment claims. The absence of a fuller written

15

explanation in the Summary Judgment Order is not the same thing as an absence of decision, and the February 2026 Clarification did not alter the parties' substantive rights. It clarified what the Summary Judgment Order had already done.

First, Defendants point to no intervening change in law. The governing standards for deliberate indifference, qualified immunity, and summary judgment were the same when the Court ruled on June 4, 2025, as when Defendants moved for reconsideration in February 2026. Nor do Defendants identify any newly announced authority undermining the legal basis for the Court's disposition. Their motion instead reiterates arguments that were available to them when summary judgment was briefed and decided.

Second, Defendants have not presented new evidence that would justify reconsideration. To the contrary, the record confirms that the material disputes on which the Court relied were known to Defendants well before the February 2026 Clarification and were carefully aired throughout the TRO proceedings and summary judgment briefing. The Court had already identified the central disputes concerning Plaintiff's actual conditions of confinement, the seriousness and trajectory of his psychological deterioration, the significance of his repeated self-harm, what each Defendant knew, and whether Defendants' response was reasonable. *See* ECF No. 133 at 3–11; ECF No. 162 at 8–10, 17–20, 34–37; ECF No. 138; Defs.' SMF ¶¶ 12–27, 44–61, 66–80. Defendants' later submissions did not materially advance or resolve those disputes. They sharpened Defendants' competing narrative, but they did not convert that narrative into undisputed fact or entitle Defendants to judgment as a matter of law.

That point substantially undercuts Defendants' present position. If the February 2026 Clarification had truly introduced a new merits ruling or a newly emergent qualified immunity problem, one would expect Defendants to identify some factual development or legal development

16

not previously before the Court. They do not. Instead, they ask the Court to revisit factual questions it had already considered at length and that Defendants themselves had already fully litigated in both the TRO proceedings and at summary judgment. Reconsideration is not a proper mechanism for relitigating those same disputes simply because Defendants remain dissatisfied with the Court's disposition.

Third, Defendants have not shown clear error. Their central complaint is that the Court failed to rule on qualified immunity at all. The record forecloses that characterization. Defendants sought summary judgment on the surviving claims in full, including on qualified immunity grounds. *See* ECF No. 138; ECF No. 162 at 34–37. The Court denied summary judgment on Plaintiff's Eighth Amendment claims. ECF Nos. 206, 285. In a case such as this one, where the qualified immunity inquiry substantially overlaps with the merits and turns on disputed facts bearing on risk, knowledge, and response, the denial of summary judgment on the surviving Eighth Amendment claims necessarily operated as a denial of qualified immunity at that stage. *See Forbes*, 313 F.3d at 146, 149. Defendants may disagree with that result, but disagreement is not clear error.

The Court is likewise unpersuaded by Defendants' suggestion that the February 2026 Clarification created a new substantive ruling. It did not. The order simply clarified that the Court's Summary Judgment Order had denied Defendants' motion with respect to Plaintiff's Eighth Amendment claims because genuine issues of material fact precluded judgment as a matter of law. ECF No. 285. That was an accurate description of the Summary Judgment Order, not a new adjudication of the parties' rights, and it did not place Defendants in a materially different posture from the one they had occupied since June 4, 2025. Defendants' present motion is therefore directed less at any substantive change in the Court's ruling than at the fact that the Summary

17

Judgment Order did not explain that ruling at greater length. Reconsideration is not a proper vehicle for converting dissatisfaction with the brevity of an order into a claim of substantive legal error, especially where the material disputes were fully joined, thoroughly litigated, and well known to the parties long before the February 2026 Clarification.

The motion is also untimely to the extent Defendants seek reconsideration of the June 4, 2025 summary judgment ruling itself. In this District, motions for reconsideration ordinarily must be filed within 14 days after entry of the order concerned. L. Civ. R. 7.1(g). Defendants did not move for reconsideration until February 25, 2026, more than eight months after entry of the Summary Judgment Order. ECF Nos. 206, 286. Reconsideration cannot be made timely simply by recasting a later clarification order as the first moment when the Court denied relief that had already been denied—particularly where the underlying factual disputes and the Court's reasons for denying judgment as a matter of law had long been apparent from the record.

In short, Defendants have not shown that the Court overlooked controlling law, ignored dispositive facts, or committed clear legal error. What Defendants principally identify is the absence of a more detailed written explanation in the Summary Judgment Order. This Memorandum supplies that explanation. It does not alter the underlying ruling.

## VI.    Effect of the Notice of Appeal and the Court's Authority to Issue This Memorandum

Defendants filed a notice of appeal on March 12, 2026 from the Court's February 2026 Clarification. ECF No. 288. That filing does not deprive this Court of authority to deny reconsideration and explain the basis of its prior ruling. Although a notice of appeal generally divests the district court of control over the aspects of the case involved in the appeal, *Griggs v.*

18

*Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982), that rule does not prevent the Court from denying reconsideration or clarifying an earlier disposition so long as it does not substantively alter the order under review.

This Memorandum does not vacate, revise, or expand the Court's June 4, 2025 summary judgment ruling. Nor does it enter a new merits determination on qualified immunity. Rather, it explains why the Court's prior denial of summary judgment on Plaintiff's surviving Eighth Amendment claims necessarily encompassed a denial of qualified immunity at that stage. The factual disputes on which that conclusion rests were not newly discovered after February 10, 2026, nor were they unknown to Defendants before they filed their notice of appeal. Those disputes had already been identified in the Court's TRO Memorandum, developed in the summary judgment record, and squarely joined by the parties in their own briefing. *See* ECF No. 133 at 3–11; ECF No. 138; ECF No. 162 at 8–10, 17–20, 34–37. In that respect, this Memorandum is explanatory, not substantive.

That point also defeats any suggestion that the February 2026 Clarification created a new appellate posture. The clarification order did not alter the governing law, rest on newly advanced facts, or inject a new theory into the case. It made explicit what the Summary Judgment Order had already determined on a fully litigated record: that the surviving Eighth Amendment claims, and the qualified immunity defense intertwined with them, could not be resolved as a matter of law because material factual disputes remained.

Federal Rule of Appellate Procedure 4(a)(4) does not change that result. A notice of appeal is suspended by certain post-judgment motions only if those motions are among the kinds listed in Rule 4(a)(4) and are timely filed under the applicable rules. Fed. R. App. P. 4(a)(4)(A), (B). To the extent Defendants' February 25, 2026 motion seeks reconsideration of the June 4, 2025

19

summary judgment ruling, it was not timely under Local Rule 7.1(g). It therefore does not retroactively convert the February 2026 Clarification into a new merits adjudication or suspend the operative effect of the notice on Defendants' theory.

The Court thus denies reconsideration and issues this Memorandum only to make explicit the basis of its earlier ruling. The Court is not reopening the summary judgment merits. It is explaining why, on a record already fully developed and long known to the parties, genuine disputes of material fact precluded judgment as a matter of law on Plaintiff's surviving Eighth Amendment claims and, for the same reason, on Defendants' assertion of qualified immunity at summary judgment.

## VII.    Conclusion

For the foregoing reasons, the Court will deny Defendants' motion for reconsideration. The Court's February 10, 2026 Clarification order neither announced a new merits ruling nor placed Defendants in a materially different posture than the one they had occupied since June 4, 2025. It simply clarified that the Court had denied summary judgment on Plaintiff's surviving Eighth Amendment claims because genuine disputes of material fact precluded judgment as a matter of law. Those same disputes likewise precluded summary judgment on Defendants' assertion of qualified immunity.